**Joan T. NAPOLI, Plaintiff,**

**v.**

**SEARS, ROEBUCK AND CO., a corporation, and Keane, Inc., a corporation, Defendants.**

**SEARS, ROEBUCK AND CO., a corporation, Counter–Plaintiff,**

**v.**

**Joan T. NAPOLI and The Object Group, Inc., a corporation, Counter–Defendants.**

**No. 93 C 0619.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 27, 1995.

---

Rick Allan White, Chicago, IL, for Joan T. Napoli, The Object Group, Inc.

Floyd A. Mandell, Jaye Quadrozzi, Katten, Muchin & Zavis, Chicago, IL, for Sears Roebuck & Co.

Sarah R. Wolff, Christine M. Bodewes, Sachnoff & Weaver, Ltd., Chicago, IL, for Keane, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Joan T. Napoli ("Napoli") brings this action against Sears, Roebuck and Co. ("Sears") and Keane, Inc., for copyright infringement, misappropriation of trade secrets, breach of contract, and conversion. Jurisdiction is based upon the federal question of the copyright infringement count, 28 U.S.C. § 1331, and supplemental jurisdiction of the state law counts, 28 U.S.C. § 1367. Currently before the Court is Napoli's renewed motion for partial summary judgment and Sears' cross-motion for partial summary judgment on the issue of the validity of Napoli's copyright.

### PROCEDURAL BACKGROUND

Napoli claims that she is the sole author of a computer software program (the "System") designed to improve the quality and efficiency of services offered by the Home Fashion Department at Sears. On May 3, 1993, Napoli moved for partial summary judgment, seeking to establish her sole ownership of a valid and enforceable copyright for the System. Sears defended the motion by arguing, *inter alia*, that it was legally a joint owner of the copyright. Judge Aspen, to whom this case was previously assigned, denied the motion for summary judgment on October 5, 1993. Napoli moved for reconsideration, which Judge Aspen also denied.

Napoli then brought a renewed motion for reconsideration based upon a recent decision of the Seventh Circuit, *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir.1994). Judge Williams, to whom the case had been reassigned, granted the motion in part, based upon the new law, and vacated Judge Aspen's opinions denying plaintiff's motion for partial summary judgment. Plaintiff was granted leave to file a renewed motion for

partial summary judgment, and the parties were directed to file additional briefs on matters left unaddressed by Judge Aspen's opinions. Napoli filed her renewed motion and, as a result, Sears filed a cross-motion. The case was then assigned to the undersigned. Both motions are fully briefed and ready for disposition. The only issue raised is whether Napoli is the sole author of the System, entitling her to summary judgment as to the validity of her copyright, or whether under *Erickson*, Sears is legally considered a joint author.

### Standard of Review

■■■■ Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This standard places the initial burden on the movant to identify those portions of the record on file which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once movant has met this initial burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c). The Court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). After applying these standards to the facts of this case, the Court denies both motions.

### FACTS [1]

In 1989, Sears decided to develop a computer program designed to improve the quality and efficiency of the services offered by the Home Fashions Department at Sears. For the next year, various Sears employees, led by Melody Villafana, the National Inventory and Systems Manager of Furniture of the Home Fashions Department, worked on the "Sears System." They planned the overall structure of the Sears System, provided the layout and graphic design of the screens and reports to be generated, selected all of the data that was to be included, and designed the layout and presentation of that data. Finally, Villafana developed and introduced new terms necessary for the computerization of Sears' business process.

Because the Sears employees had limited experience working in the DataEase software that had been selected for the Sears System, Villafana contracted with Norrell Services, an outside company, to help complete the programming in August 1990. Norrell originally sent Richard Francis to assist Sears, but he left Norrell in November 1990. Norrell then sent Napoli, who was a Norrell employee. She worked with Villafana at Sears until March of 1991, when she was fired from Norrell and left Sears. At that time, the Sears System was still incomplete, and all work on it had apparently ceased.

In July 1991 Napoli contacted Sears and offered to complete the Sears System. Napoli and Sears then entered into an agreement whereby Napoli would complete the Sears System and provide a limited warranty period. In return, Sears agreed to pay Napoli $10,000. Napoli began work on completing the existing system, but claims that in October 1991, she concluded that the Sears System, as it had been developed, suffered from a fundamental design flaw. She informed Villafana of this fact, and told her that she (Napoli) was considering entirely redesigning the internal structure of the system. Villafana told her not to do so, and informed her that Sears would be under no obligation to her if she did. Nevertheless Sears claims to have continued to provide extensive assistance to Napoli, allegedly giving her mock-ups of visual screens and sample reports produced by the uncompleted system. Villafana and Napoli remained in frequent contact.

---

**1.** This general statement of facts has been taken from Judge Aspen's Memorandum Opinion and Order denying Napoli's original motion for partial summary judgment. To the extent that the parties have submitted any additional information creating a dispute as to any material fact that Judge Aspen found to be undisputed, it will be noted in the body of this opinion.

In January 1992 Napoli delivered a computer system to Sears, which Napoli claims is the system she developed after the failure of the Sears System. Sears paid her $10,000, pursuant to the July 1991 agreement, and Napoli provided the repair assistance that she had promised. Sears claims, however, that the system which Napoli provided was never fully functional. The relationship between the two parties began to break down in the spring of 1992, and Napoli ultimately demanded that Sears return her source code, which Sears did.[2] However, Napoli contends that Sears made and retained a copy of the source code, which it wrongfully provided to defendant Keane, Inc., for the purpose of evaluating it and preparing a derivative version.

### DISCUSSION

### Napoli's Motion

Despite the multitude of paper filed containing rampant bickering between the lawyers, the issue before the Court is fairly narrow.[3] Napoli claims that she is the sole owner of the computer software application (the System) by virtue of her claim that she is the sole author of the entire source code. Therefore, she claims to be entitled to summary judgment with respect to the validity of her copyright. In response, Sears argues that Napoli is not entitled to summary judgment because: (1) there is a genuine issue of fact as to whether Napoli is the author of the entire source code and, in any event; (2) Sears supplied the graphic screen design and report designs classifying the System as a "joint work," making Sears a joint author and giving it the right to use and to license the System.

■ Under federal copyright law if a work is considered "joint," the joint authors hold undivided interests in the work, despite any differences in each author's contribution. 17 U.S.C. § 201. Each author, as co-owner, has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits. *Childress v. Taylor,* 945 F.2d 500, 505 (2nd Cir.1991); *Weinstein v. University of Illinois,* 811 F.2d 1091, 1095 (7th Cir.1987). Thus, the only issue before the Court is whether Sears can be considered a joint author. If so, then Sears has a right to use and license the System, and Napoli's claim for partial summary judgment as well as her claim for copyright infringement must fail.

■ A "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (1972). In *Erickson,* the Seventh Circuit adopted the copyright or subject matter test formulated by Professor Goldstein to determine the issue of joint authorship. Under this standard, "[a] collaborative contribution will not produce a joint work, and a contribution will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright." *Erickson,* 13 F.3d at 1070. In addition, the test requires that the parties must have intended to be joint authors at the time the work was created. *Id.* That intent requirement is satisfied if the parties intended to merge their respective contributions into a single whole. 17 U.S.C. § 101 (1977).

■ Napoli asserts initially that she is sole author of the literal text (source code) of the System, and that only the source code can stand on its own as copyrightable matter. Therefore, she claims that she is the sole

**2.** Source code (or literal text as Napoli often calls it) is the computer program code as the programmer writes it, using a particular programming language, generally written in a high level language such as BASIC, COBOL, or FORTRAN. Copyright Office Practice for Computer Programs 321.01.

**3.** To "help" the court decide the narrow issue presented in the pending motions, the parties have presented six Local 12(M), (N) statements supported by six affidavits, and twelve motions and/or memoranda of law. The memoranda, some of which are oversized, are replete with unnecessary attacks on opposing counsel and mischaracterizations of the arguments. In the future, the parties are directed to confine their memoranda to proper argument and not burden the court with childish name-calling. No further motions for leave to file oversized briefs will be granted.

author and owner, and her copyright is valid. To support her factual claim of authorship Napoli has provided a listing of the hundreds of files that in their entirety comprise the System, and has challenged Sears to identify any literal text that it wrote. According to Napoli, it is a relatively simple matter for Sears to print out the entire literal text of the System and then identify which lines it claims to have authored. Sears has not elected to do so, and Napoli claims that Sears has not because it cannot.

Sears' response is both factual and legal. First, it contends that the System is merely a completion of a product begun by Sears' employees and by the Norrell contracted employees (including Napoli) through March of 1991, and that the contribution of the Sears and Norrell employees is incorporated into the work. To support this argument, Sears points to the similarity of the screens and reports generated by the System before and after Napoli became involved, and argues that the similarity supports an inference that Napoli did not delete and rewrite all of the source code as she contends. Secondly, Sears maintains that Napoli is wrong in her legal contention that only source code or literal text is considered copyrightable matter. Sears maintains that its graphic design of the screens and reports constitutes matter independently copyrightable from the literal text and, therefore, under *Erickson,* Sears is legally a joint author. (This argument is also the basis for Sears' cross-motion for partial summary judgment which will be discussed below.)

In reply, Napoli first suggests that because Sears failed to print out and analyze the source code to determine conclusively which parts, if any, it wrote, Sears is precluded from arguing that Napoli did not write it all. Secondly, Napoli argues that because she was the Norrell contracted employee who wrote the source code incorporated into the Sears System from October, 1990 to March, 1991, she alone can claim authorship/ownership of the source code created during that period. The Court finds both arguments unpersuasive.

Paragraph 12 of Sears' contract with Norrell provided in part:

Agency [Norrell] acknowledges and agrees that all materials prepared by the Agency is work specifically ordered for commission by Sears, and Agency hereby irrevocably grants, sells and assigns to Sears each and every right whatsoever in and to such materials. Accordingly, Sears shall be the sole and exclusive owner and titleholder of all rights of every kind and nature whatsoever in and to such materials including, but not limited to, enhancements, amendments and updates.

Under this agreement, it appears likely that ownership rights of any source code produced by Napoli while employed by Norrell are retained by Sears. Therefore, if after October 1, 1991, Napoli incorporated any of the source code that she had written while previously employed by Norrell, then she is not the sole author/owner of the entire source code and is not entitled to partial summary judgment. Despite her contentions otherwise, whether Napoli did incorporate any of the previous work (or any work of the other Norrell or Sears employees) is a question of fact in dispute that cannot be determined by summary judgment. All that Napoli has presented (or claims that can be produced easily) is a printout of the final source code, which by itself proves nothing without a comparison to a printout of the source code she claims to have deleted. Because of the similarity of the final visual product to the "interim" product, it can be reasonably inferred that some of the original source code was incorporated.

For purposes of a motion for summary judgment, the court must view the facts in the light most favorable to the non-movant. Accordingly, because the court finds that there is a genuine issue of material fact as to whether Napoli was the sole author of the source code for this System, her motion for partial summary judgment is denied.

### SEARS' CROSS-MOTION

Sears has also moved for partial summary judgment, claiming that its design of the screens and reports generated by the System gives it joint author status under the *Erickson* test. Napoli responds by once again arguing that only literal text is subject to

copyright, and that the graphic design of the screens and reports alone without the literal text that produces it on the computer is not independently copyrightable. In essence Napoli argues that although her copyright protection extends to the screen displays and reports because she wrote the literal text that instructs the computer to produce them, the actual author/designer of those screens and reports can have no claim to joint authorship. The Court disagrees.

■ First, it is now beyond dispute that a copyright in a computer program extends to its screen displays. *Manufacturers Technologies, Inc. v. Cams, Inc.*, 706 F.Supp. 984, 992 (D.Conn.1989). The Copyright Office has stated that a single copyright registration of a computer program extends copyright protection not only to the literal elements of the program—its source and object codes—but also to the screen displays it generates to the extent that they contain original creative authorship. *Id.* This statement of the Copyright Office was a reaffirmation of its long-standing policy, and was made only because of confusion that had arisen as a result of the Office's concurrent acceptance of separate registration of screen displays. It no longer accepts such separate registration. *Id.* at 990. Thus, according to *Cams* a single registration of a computer program accomplishes two interrelated yet distinct registrations: one of the program itself, and one of the screen displays or user interface of that program, to the extent that each contains copyrightable subject matter. *Id.* at 992–93. Therefore, a computer program and its screen displays are, for copyright purposes, fundamentally distinct. *Id.*, see also *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1342 (5th Cir. 1994) (non-literal elements of computer programs may be copyrightable).

Napoli recognizes that copyright coverage extends to non-literal elements of the program, but asserts that only the author of the source code for the non-literal elements is entitled to claim authorship. Not surprisingly, Napoli has cited no recent cases directly supporting this argument. It is not surpris-

ing, because the reason copyright coverage extends to non-literal elements is that the same non-literal element (i.e., the screen display) can be produced by different source codes. *Cams,* 706 F.Supp. at 992 (and cases cited therein). Thus, it is the actual design of the screen that is subject to registration, assuming that the design contains original and creative authorship (i.e., copyrightable subject matter). Therefore, if Sears is actually the author of the screen designs and reports, then it is a "joint" author of the System and co-owner entitled to use or license the System.[4]

■ To be an author, however, Sears must have supplied more than mere direction or an idea: it must be the "party who actually creates the work, that is the person who translates an idea to a fixed, tangible expression entitled to copyright protection." *Erickson,* 13 F.3d at 1071 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989)).

■ It is undisputed that Sears created the graphic design of screens and reports to be used in the original Sears System prior to Napoli's involvement. It is also undisputed that those designs were given to Napoli in a fixed, tangible form for her review. She did in fact review them. Napoli denies, however, that she used the designs in the final System, swearing in an affidavit that she redesigned *everything.* Sears again asserts that the reports generated by Napoli's System are so similar to the reports designed by Sears initially, that the Court can infer that Napoli copied them in whole or in part.

■ The Court has reviewed the reports presented to it, and they are indeed strikingly similar. Under copyright law, however, two exact same works may be copyrightable separately so long as the similarity is fortuitous, not the result of copy. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Despite acknowledging her receipt of the original screen and report designs from Sears, and despite the obvious

---

4. Napoli cannot seriously dispute that whatever work Sears contributed was to be merged with

Napoli's work into a single whole, satisfying the intent requirement of 17 U.S.C. § 101.

similarities between the reports generated by her System and those original designs, Napoli was willing to swear under penalty of perjury that Sears' initial designs played no part in her work, and that she completely ignored those original designs in redesigning the System. In light of Napoli's affidavit, an issue of material fact has been raised, requiring a denial of Sears' motion for partial summary judgment.[5]

### CONCLUSION

For the reasons set forth above, Napoli's motion and Sears' cross-motion for partial summary judgment are denied. This matter is set for a report on status on February 7, 1995, at 9:15 a.m.

5. The court's conclusion that the actual graphic design of the screens and reports without the source code constitute copyrightable matter under *Erickson,* provides an additional reason to deny Napoli's motion.